AO 106 (REV 4/10) Affidavit for Search Warrant

AUSA Sean Franzblau, (312) 371-4171

**FILED**
11/10/2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

CC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**

In the Matter of the Search of:

Case Number: **20 M 597**

The returns received from Apple Inc. for Search
Warrant ▮▮▮▮ (authorizing the search of the
iCloud Account for Apple ID ▮▮▮▮ sbcglobal.net),
further described in Attachment A

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Gregory B. Linder, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

**See Attachment A**

located in the Northern District of Illinois, there is now concealed:

**See Attachment B**

The basis for the search under Fed. R. Crim. P. 41(c) is evidence.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2) and 371 | federal program bribery and conspiracy to commit federal program bribery |

The application is based on these facts:

**See Attached Affidavit**,

Continued on the attached sheet.

*Gregory B. Linder*
_____
*Applicant's Signature*

GREGORY B. LINDER, Special Agent
Federal Bureau of Investigation
_____
*Printed name and title*

Pursuant to Fed. R. Crim. P. 4.1, this Application is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the statements in the Application and Affidavit by telephone.

Date: November 10, 2020
_____

_____
*Judge's signature*

City and State: Chicago, Illinois

JEFFREY CUMMINGS, U.S. Magistrate Judge
_____
*Printed name and title*

UNITED STATES DISTRICT COURT    )
        )
NORTHERN DISTRICT OF ILLINOIS    )

## AFFIDAVIT

I, Gregory B. Linder, being duly sworn, state as follows:

1.    I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately 2016. I am currently assigned to a public corruption squad, the primary purpose of which is to identify and investigate public corruption and bribery-related conduct by public officials. Through my training and experience, I am familiar with the techniques used to investigate such violations, including consensual monitoring, surveillance, data analysis, and interviewing witnesses and others who have knowledge of the corrupt activities. I have also participated in the execution of numerous federal search warrants.

2.    This affidavit is made in support of an application for a warrant to seize additional items from search warrant returns that Apple Inc. provided to law enforcement pursuant to a July 24, 2020 search warrant (the "**Subject Returns**"), which warrant authorized the search of the iCloud Account for Apple ID ███████sbcglobal.net (the "**Subject Account**"). Specifically, on July 24, 2020, this Court issued a search warrant for the **Subject Account** (the "██████ warrant"), attached to this application as Exhibit 1. Attachment A, Section III of the ██████ warrant authorized the government to seize certain items within the **Subject Account** that the Court found there was probable cause to believe constituted evidence of violations of Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2),

and 371 ) (the "**Subject Offenses**"). *See* Exhibit 1, 4.[1] While executing the ███████

warrant, agents discovered in plain view certain other items within the **Subject**

**Account** that there is probable cause to believe also constitute evidence of the

**Subject Offenses**, but which arguably do not fall within the scope of Attachment A,

Section III of the ███████ warrant.[2] Out of an abundance of caution, the government

now seeks a second warrant for the **Subject Account** that expands the scope of the

items that the government may lawfully seize from the **Subject Account**.

 3. To be clear, the government is not asking the Court to order Apple, Inc.

to provide the government with any additional content from the **Subject Account**.

Rather, the government is seeking authorization to formally seize additional items

from the **Subject Returns** that Apple Inc. has already provided to the government

pursuant to the ███████ warrant.

 4. The statements in this affidavit are based on my personal knowledge,

and on information I have received from other law enforcement personnel and from

persons with knowledge regarding relevant facts. Because this affidavit is being

---

[1] All page number cites are to the page number of the PDF document, not any page numbers that may appear on the exhibits themselves.

[2] As explained in the ███████ Warrant, Addendum to Attachment A, subparagraph c., in order to determine what electronic communications from the **Subject Account** fell within the scope of Attachment A, Section III, it was necessary for investigating agents to open and review all of the electronic communications that Apple, Inc. turned over (that were within the scope of Attachment A, Section II ("Files and Accounts to be Copied by Employees of Apple, Inc.")). The Seventh Circuit applies the Plain View Doctrine in the digital context; thus, where, as here, agents limit the scope of their digital search to areas where items authorized to be seized are likely to be discovered, other evidence of crime that agents may inadvertently discover in those areas is not subject to suppression. *See United States v. Mann*, 592 F.3d 779, 786 (7th Cir. 2010).

submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that additional evidence of violations of the **Subject Offenses** are located within Apple Inc.'s returns to the ███████ warrant, which returns are currently digitally stored at the FBI Chicago Field Office, located at 2111 Roosevelt Road, Chicago, Illinois.

I. **FACTS SUPPORTING PROBABLE CAUSE TO SEIZE ADDITIONAL ITEMS WITHIN APPLE INC.'s RETURNS TO SEARCH WARRANT** ███

A. <u>Background</u>

5.      On or about July 24, 2020, the government submitted an application for a warrant to search the **Subject Account** (the '███████ application"). The ███
███ application is attached to this application as Exhibit 2, and is incorporated herein by reference. The ███████ application established probable cause that: (1) the **Subject Account** was used by ████████████ ██████ ████████████
██████████; (2) in or around 2019, ██████ made a series of concealed payments to City of Chicago ████████ ████████ ██████ █████████ in exchange for ████████ interfering with a development project in the ████████ that was against ████████ interests ("the Project"), in violation of the **Subject Offenses**; and (3) evidence of ██████ and ████████ violations of the **Subject Offenses** was then contained within the **Subject Account**.

6.      In summary, as explained in the ████████ application, the FBI has

3

developed a confidential source (CS-1) who was ████████ ████████████

████████████████████████████████████ ██████████ ████████

████████████████████████████. ██████████████████████

████████████ ██████████ ████████████████ ████████ ████████████

████████████████████████████████████████████████████

████████████████████████████████ ██████████ ████████

████████████████████████████ ████████ ████████████ which

was corroborated in part by independent evidence. *Id.* at ¶¶ 12-14, 20. Approximately

two weeks later, CS-1 met with ██████████ and ████████ who explained that

██████████ 1 (██████████ predecessor ████████ in the ██████████ had "screwed"

████████ by convincing one of the Project's developers to build the ██████████████

on a property located at the intersection of ████████████████████████████

████████████████ (the "██████████ ████") instead of on a nearby parcel owned by

████████ where the developer had originally planned to build the ██████████████.

*Id.* at ¶¶ 21-22. ████████ further explained that he had lost a lot of money on the deal,

and wanted to retaliate against ██████████ and the Project developer as a result. *Id.*

Immediately after the meeting, ██████████ told CS-1 that ████████ ████████████

████████████████████ ████████ ████████████████ *Id.*

7. According to CS-1, around this same time ████████████ was planning

several renovations to his new ██████████ office, located at ████████████████

Avenue in Chicago, including approximately $16,000 worth of ██████████████.

According to CS-1, s/he explained to █████████ that he could not use City funds to pay for the renovations, and █████████ responded that █████ was going to pay for the █████████. Ex. 2, ¶ 23. Days after this conversation, CS-1 observed █████ hand █████████ an envelope containing $5,000 in cash that █████████ used to pay the owners of his █████████ office building for the █████████. *Id.* at ¶¶ 24-28. According to CS-1, █████████ took steps to conceal the payment, including by asking the owners of his █████████ office building to not record the payment, and not reporting the payment in his █████████ reports because █████ had instructed him not to. *Id.* at ¶¶ 27-28. On at least one other occasion within the following weeks, CS-1 saw █████████ meet with █████ privately outside of his office, and return carrying a stuffed envelope that appeared similar to the envelope containing $5,000 that █████████ had previously received from █████ *Id.* at ¶ 29.

8. According to CS-1, in or around May and June 2019, shortly after █████████ received the $5,000 from █████ the window replacements were completed at █████████ █████████ office. As explained at paragraphs 30 of the █████████ application, CS-1 provided agents with several photographs that CS-1 stated s/he received from █████████ which appeared to depict the window replacement/associated renovation work at the █████████ office at various phases. Further, City of Chicago records show that a building permit to replace windows at █████████ █████████ office was issued on May 13, 2019. Ex. 2, ¶ 31.



9.    According to CS-1, months later, in ▬▬▬▬▬▬, ▬▬▬▬▬▬ instructed CS-1 to draft a statement to announce formally ▬▬▬▬ opposition to the ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Ex. 2, ¶¶ 49-50. According to CS-1, ▬▬▬▬▬ told CS-1 to say in the statement that he was opposing the Project based on feedback he had received from the public. *Id.* at 49. According to CS-1, that did not make any sense because the Project appeared to have the strong support of the vast majority of ▬▬▬▬▬ ▬▬▬▬▬. *Id.* According to CS-1, minutes after ▬▬▬▬▬ told CS-1 to draft the statement, ▬▬▬▬▬ stated words to the effect of, ▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬ *Id.* at ¶ 50. As explained in detail throughout the ▬▬▬▬ application, substantial independent evidence, including bank records, toll records, and a text message from ▬▬▬▬▬ to CS-1 concerning ▬▬▬ and the Project, generally corroborate CS-1. *See, e.g.*, *Id.* at ¶¶ 32-40, 51.

10.    The ▬▬▬▬ application requested that the Court order Apple Inc. (the service provider that maintained the **Subject Account**) to provide exact duplicates of all text message communications sent or received between February 2019 and July 24, 2020 that were then contained within the **Subject Account**, as well as all Apple device location data from May 2019 only that was then contained within the **Subject Account**. *See* Exhibit 2, 45-46 (Attachment A, Sections I ("Search Procedure") and II ("Files and Accounts to be Copies by Employees of Apple, Inc.)).

11. The ▮▮▮▮▮ application further requested authorization for the government to seize from within the materials set out in paragraph 6 above the following materials:

  a. *All information described above in Section II that constitutes evidence concerning violations of the **Subject Offense**, as follows:*

   *1. Communications with ▮▮▮▮▮ related to the Project, official acts taken or caused by ▮▮▮▮▮ related to the Project, Development Company 1, Development Company 2, Developer 1, Developer 2, ▮▮▮▮▮1, payments from ▮▮▮▮ to ▮▮▮▮▮ and/or meetings between ▮▮▮▮ and ▮▮▮▮.*

   *2. Items related to the Project.*

   *3. Items related to Development Companies 1 and 2, and/or Developers 1 and 2;*

   *4. Items related to ▮▮▮▮ physical presence at ▮▮▮▮▮ Ave in May 2019.*

   *5. Items related to the identity of the user or users of the **Subject Account**.*

*See* Exhibit 2, 46 (Attachment A, Section III ("Information to be Seized by Law Enforcement Personnel")).

12. On July 24, 2020, the Court issued the ▮▮▮▮▮ warrant, which ordered Apple to disclose, and law enforcement agents to seize, contents of the

**Subject Account** according to the parameters described above. *See* Exhibit 1, 3-4 (Attachment A).

13.     On or about July 24, 2020, investigating agents served Apple Inc. with the ██████ warrant. On or about August 3, 2020, Apple Inc. provided investigating agents with the returns associated with the ██████ warrant. The returns were in a digital, encrypted format that was difficult for investigating agents to review without forensic analysis. As a result, investigating agents submitted the returns to FBI computer forensic laboratories, including the Regional Computer Forensic Laboratory ("RCFL") in Chicago, to process the returns and convert them into a format that investigating agents could more easily review. Investigating agents submitted the returns for forensic processing on or about August 4, 2020. The FBI computer forensic laboratories completed their processing of the returns on or about October 13, 2020. Investigating agents completed their execution of the ██████ warrant immediately thereafter.

    B.     <u>While executing the ██████ warrant, agents observed items in plain view that constitute evidence of the **Subject Offenses**, but which arguably fall outside the scope of Attachment A, Section III of the ██████ ██ Warrant</u>

14.     During the execution of the ██████ warrant, agents discovered in plain view multiple text messages between ██████ and ██████ as well as ██████ and third parties, that there is probable cause to believe constitute evidence of the **Subject Offenses**, but which arguably fall outside the scope of the warrant's Attachment A, Section III. These items include multiple text message



communications between █████ and ████████ and █████ and third parties concerning renovations at ████████ new ████████ office located at ████████ █████ Avenue in Chicago. The messages evidenced that █████ was heavily involved in planning and overseeing the renovations, which included the replacement of windows.[3] The messages included the following:

- A May 8, 2019 text message from a third party to █████ (9:08 a.m.): "This is Tom with ████████ can you please give me a call about █████ office[?] Can we meet there today anytime[?]"[4]

- A May 9, 2019 text message from █████ to ████████ (12:44 p.m.): "Call the concrete guy, he's waiting for your call."

- A May 10, 2019 text message exchange between █████ and "Tom" from ████████:

  o █████ (8:19 a.m.): "What do you think should he have it scraped and painted or should we just cover it would break metal[?]"

  o █████ (8:20 a.m.): "Break metal would be faster and quicker or panel 15 just leave a few weeps holes."

  o Tom (8:20 a.m.): "We can do Breakmetals but lentil is totally gone

---

[3]    While Attachment A, Section III of the █████ warrant included "Communications with ████████ related to . . . payments from █████ to ████████ it did not specifically list communications related to the renovations/improvements at █████ office, nor did it include communications between █████ and third-parties regarding those renovations/improvements. While there is a reasonable basis to believe that █████ paid for the renovations (and thus communications about the renovations constitute evidence of payments from █████ to ████████ out of an abundance of caution, the government is seeking to expand the scope of items to be seized so it more clearly covers all communications related to renovations at ████████ ████████, including conversations between █████ and third parties.

[4]    Based on a search of the Illinois Secretary of State website, ████████, Inc. is a Chicago-based company owned by ████████. A general internet search for ████████████████████████████████████████████████

9

it's gonna drop."

- o Tom (8:20 a.m.): "On big one only but we can install the window no problem."

- o Tom (8:21 a.m.): "Small window lentils are OK they just kept the water inside whoever did this at no idea how that works."

- o Tom (8:22 a.m.): "I think big lentil should be replaced somebody would have to look at that."

- o ███ (8:23 a.m.): "Can you call ███ and tell him to have the building owner look at that because the owner of the building should replace that[?]"

- o Tom (8:24 a.m.): "K"

- o Tom (8:39 a.m.): "██ is going to talk to the owner and he's going with clear anodized so if you want to give him those couple doors we can probably use them if you want me to stop by I'll stop by to take a look. Let me know."

- A May 10, 2019 text message from ███ to ████ (8:24 a.m.): "███ I told Tom from the glass company to call you[.] [T]he steel above the window's is rusted but some of the steel that's holding the brick needs to be replaced[.] [I]t's a dangerous situation[,] the building owner should take care of that."

- A May 18, 2019 text message from ███ to a third party (9:44 a.m.): [M]y new ████ [is] asking if we have that emblem[,] I'm doing some concrete work for him right now and he wants to put it in the concrete."

- A May 18, 2019 text message exchange between ████ and ████

  - o ███ (12:17 p.m.): "How's the widows [sic] coming did he give you a good bricklayer[?]"

  - o ████ (12:17 p.m.): "He is good."

- A June 2, 2020 text message from ██████ to ████ "Ok, looking for a carpenter to do trim work around the windows."

10

- A June 3, 2020 text message response from ████ to ████████ "Good morning ██████ the carpenter cancelled on me this morning[,] we're rescheduling for next week."

15.    The above messages and other similar messages concerning ████ involvement in renovations to ██████ ██████ office are highly significant to the investigation of the **Subject Offenses**. First, as explained in detail in the ██ ████ application (Exhibit 2, ¶¶ 21-23, 30-31) and summarized above, there is probable cause to believe that ████ paid for the ██████████ at ██████ ██████ office, and ██████ took steps to conceal the payments.

16.    Second, as explained in part in the ██████ application, there is independent evidence that ██████ did not pay for the window replacements at his ██████.[5] Specifically, I have completed a financial investigation of ██████ that included a review of ██████ ████████ reports, ██████ ████████ account, and all of ██████ known personal bank and credit card accounts. There is no record of ██████ paying for renovations to his ████████ with any personal accounts, or with his ██████ expense account. There is evidence of ██████ paying for certain

---

[5]    At the time the government submitted the ██████ application in July 2020, it had completed a financial review of ██████ (*see* Ex. 2, ¶ 31) but had not yet completed its review of ██████ personal finances (personal bank account and credit cards). The government has since completed its review of ██████ personal finances and confirmed there is no apparent record of payments for renovations/improvements to the ██████ office (including window replacements) within ██████ personal financial records.



small-scale renovations/improvements for his ████████████████████████████,

but this does not appear to include the window replacements.

17. Specifically. ███████ listed on his ████████████████████████

three separate expenditures with the listed purpose as "Office buildout" for purchases

at Lowe's Home Improvement, Home Depot, and ████████████████████. The total

amount for the three expenditures was $3,726.94. There are no reported payments to

████████████ or any other apparent window or glass companies. Thus, financial

records corroborate that a third party (someone other than ████████ paid for the

window replacements at ██████████ ████████████.

18. I have completed only a partial financial investigation of ████████

Specifically, I have obtained bank records for all of ██████ known personal accounts.

████████ personal accounts do not reflect any activity that is consistent with him

paying for the window replacements at ██████████ office, or making a $5,000 cash

withdrawal in or around May 11 or May 18, 2019. *See* Exhibit 2, ¶¶ 24, 33, 34.

However, I have not yet obtained records for ███████ business bank accounts because

I am still in the process of determining where those accounts are held. If ███████ paid

for the window replacements at ██████████ ████████████ I believe it is most

likely that he used money from a business account as it would be easier to conceal (as

explained in the ████████████████, ███████ himself owns a ████████████████

called ████████████████████; there are obviously many ostensibly innocent

reasons why a glass service-provider might be paying ████████████, a glass

12

supplier). Further, because this investigation is still in a covert phase, I have not subpoenaed ████████████ directly for records concerning who paid for the renovations at ████████████ ████████████.

19. While executing the ████████ warrant, agents also observed in plain view several text message communications that evidenced that, by May 18 2019, ████████ had done certain things for ████████████ that made ████████ feel indebted to ██████ and ████████████ was starting to take certain non-official actions to reciprocate.[6] This is highly significant because, as explained in detail in the ████████████ application, there is substantial evidence that the $5,000 payment that CS-1 observed ████████ make to ████████ occurred on the morning of May 18, 2020. *See* Exhibit 2, ¶¶ 24, 33, 34, These messages included a May 18, 2020 message sent from ████████████ to ██████ (10:19 a.m.): ████████████████████████████ ████████████████████.

20. The following day, May 19, 2020, ████████████ and ██████ had a text exchange in which ████████████ provided ██████ with a "floor ticket" to what is believed to be the ████████████████████████████████ ████████ because ██████ had been "very very good" to ████████████

---

[6] While Attachment A, Section III of the ████████ warrant covered items related to payments from ██████ to ████████████ and official action taken by ████████████ related to the Project, it did not cover other benefits or things of value conferred by ████████████ on ████████

[7] May 19, 2019 is one day after agents believe, based on information provided by CS-1 and corroborating bank records, ██████ made the $5,000 cash payment to ████████████ that CS-1 observed.

13

- ███████ (8:13 p.m.): "███ I got u a floor ticket U have been very very good to me. If u want to go, go. If not, but let me know.
- ███████ (8:16 p.m.): "Ok I'm in[,] see you tomorrow."
- ███████ (8:26 p.m.): "U still want me to put it in yr mailbox right?"
- ███████ (6:27 p.m.): "Yes."
- ███████ (10:16 p.m.): I put ticket inside yr door."
- ███████ (10:16 p.m.): "Floor ticket."
- ███████ (8:39 a.m. on May 20, 2019): "Thank you."

21.     Based on the above, as well as the information contained in the ███ ███ application, I respectfully submit there is probable cause to believe: (1) the payments/benefits that ███ conferred on ███████ in and around May 2019 included payments for and oversight of certain renovations and other improvements to ███████ ███████; and (2) in return, ███████ began conferring a series of benefits on ███ which culminated with ███████ announcing his formal opposition to the Project on September 27, 2019.

22.     Some of the communications that agents have discovered in Apple Inc.'s returns to the ███████ warrant that pertain to the above subject matter—including communications concerning renovations to ███████ ███████ and communications related to ███████ conferring things of value on ███████ constitute evidence of the **Subject Offenses** but arguably fall outside the scope of the "items to be seized" in Attachment A, Section III of the ███████ warrant (see paragraph 7 above). For that reason, the government now seeks authority to expand

14

the scope of items it is authorized to seize from the ██████ returns to include: (1) items related to renovations, improvements, and/or other construction work at ██████ ██████; and (2) items related benefits or things of value given by, or on behalf of, ██████ to ██████ and benefits or things of value given by, or on behalf of, ██████ to ██████

## II.    CONCLUSION

23.    Based on the above information, I respectfully submit that there is probable cause to believe that federal program bribery and conspiracy to commit federal program bribery offenses, in violation of Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2) and 371, have been committed, and that evidence relating to this criminal conduct, as further described in Attachment B, will be found in the Subject Premises, as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for the **Subject Returns**, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

FURTHER AFFIANT SAYETH NOT.

_Gregory B. Linder_
_____
Gregory B. Linder
Special Agent
Federal Bureau of Investigation

Sworn to and affirmed by telephone this 10th day of November, 2020

_____
Honorable JEFFREY CUMMINGS
United States Magistrate Judge

16

## <u>ATTACHMENT A</u>

The **Subject Returns** constitute approximately 13 gigabytes of data that Apple Inc. provided to investigating agents on or about August 3, 2020, pursuant to the ███████ warrant. The **Subject Returns** are currently stored on FBI computers located at 2111 Roosevelt Rd., Chicago, IL 60608.

## <u>ATTACHMENT B</u>

**LIST OF ITEMS TO BE SEIZED**

Evidence concerning violation of Title 18, United States Code, Sections 666(a)(1)(B), 666(a)(2) and 371, as follows:

1.     Items related to renovations, improvements, and/or other construction work at  and

2.     Items related to benefits or things of value given by, or on behalf of,